# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge John L. Kane

Civil Action No. 10-cv-00654-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of OPPENHEIMER QUEST FOR VALUE FUNDS,

     Plaintiff,

v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH H. WIKLER,
PETER I. WOLD,
BRIAN F. WRUBLE,
DAVID K. DOWNES,
RUSSELL S. REYNOLDS, JR.,
WILLIAM F. GAVIN,
THOMAS W. COURTNEY,
LACY B. HERRMANN, and
JOHN V. MURPHY,

     Defendants,

OPPENHEIMER QUEST FOR VALUE FUNDS,

     Nominal Defendant.

---

## MOTION OF NOMINAL DEFENDANT OPPENHEIMER QUEST FOR VALUE FUNDS TO DISMISS THE COMPLAINT UNDER RULES 12(b)(6) AND 23.1 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MASS. GEN. LAWS CH. 156D, § 7.44

---

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................iii

PRELIMINARY STATEMENT ...........................................................................................1

SUMMARY OF RELEVANT FACTS ................................................................................2

    The Parties .....................................................................................................................2

    The Demand ...................................................................................................................3

    The Board Forms a Special Litigation Committee .......................................................4

    The SLC Recommends that the Board Decline
    to Take the Actions that Smith Had Demanded ...........................................................8

    The Board Adopts the SLC's Recommendation ...........................................................9

    Plaintiff Files this Derivative Action ............................................................................9

ARGUMENT .........................................................................................................................10

    I.   THIS ACTION MUST BE DISMISSED BECAUSE PLAINTIFF
        HAS FAILED TO SHOW THAT THE TRUSTEES ACTED
        IMPROPERLY IN REFUSING THE DEMAND ..................................................10

CONCLUSION ......................................................................................................................15

    CERTIFICATE OF SERVICE ...........................................................................................17

## TABLE OF AUTHORITIES

Page

### CASES

E.F.W. v. St. Stephen's Indian High School,
   264 F.3d 1297 (10th Cir. 2001) .................................................................... 13

Financial Planning Ass'n v. SEC,
   482 F.3d 481 (D.C. Cir. 2007) ........................................ 3, 7, 8, 13, 14, 15

Forsythe v. Sun Life Financial, Inc.,
   417 F. Supp. 2d 100 (D. Mass. 2006) .......................................................... 12

Furman v. Walton,
   2007 WL 1455904 (N.D. Cal. May 16, 2007, aff'd,
   320 F. App'x 638 (9th Cir. 2009) ................................................................ 11

Harhen v. Brown,
   431 Mass. 838 (2000) ........................................................................... 11, 13

ING Principal Protection Funds Derivative Litig.,
   369 F. Supp. 2d 163 (D. Mass. 2005) .......................................................... 12

Kamen v. Kemper Fin. Servs. Inc.,
   500 U.S. 90 (1991) ............................................................................... 10, 11

Smith v. Franklin/Templeton Distrib., Inc., No. C 09-4775,
   2010 WL 2348644 (N.D. Cal. June 8, 2010) ......................................... 14, 15

### STATUTES & RULES

17 C.F.R. § 270.12b-1(b) ................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1

Fed. R. Civ. P. 23.1 ..................................................................................... 1, 10

Fed. R. Civ. P. 23.1(b)(3)(B) ........................................................................... 10

Mass. Gen. Laws ch. 156D, § 7.41 (2010) ...................................................... 11

Mass. Gen. Laws ch. 156D, § 7.44(a) ........................................................................12

Mass. Gen. Laws ch. 156D, § 7.44(b)(2) (2010)........................................................12 n.2

Mass. Gen. Laws ch. 156D § 7.44 cmt. 2 (2010) .....................................................12

Mass. Gen. Laws ch. 182, § 2B (2010) ....................................................................12

SEC Rule 12b-1 ................................................................................................3, 8, 14

Nominal defendant Oppenheimer Quest for Value Funds, by its attorneys, respectfully moves the Court under Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure and Chapter 156D, Section 7.44, of the Massachusetts General Laws for an order dismissing, with prejudice, all claims asserted in this action.

## PRELIMINARY STATEMENT

Plaintiff Bradley Smith ("Smith" or the "Plaintiff") purports to bring this shareholder derivative action on behalf of the Oppenheimer Quest for Value Funds (the "Fund" or the "Trust"). Smith claims that certain payments which the Trust made to its distributor and which the Trust's distributor made to retail broker-dealers are unlawful because the broker-dealers who received the fees may not have registered as investment advisers. Based on these allegations, Smith contends that the Trust's distributor violated the Investment Company Act of 1940 ("ICA"), and he asserts that the Trustees breached their fiduciary duties to the Trust and engaged in a waste of Trust assets by authorizing the Trust to make the payments.

Before filing this action, Plaintiff demanded that the Trust's board of trustees (the "Board") stop authorizing the payments he challenges. In response, the Board formed a Special Litigation Committee ("SLC") to investigate Smith's demand. The SLC consisted of a Board member who had played no part in making the decisions under review; the SLC retained independent counsel who were well-versed in the regulatory scheme that was at issue; and through its counsel, the SLC sifted through the relevant facts and legal principles. After receiving a detailed analysis of the facts and law, the SLC recommended that the Board decline to take the steps that Smith had demanded. The full Board considered the SLC's report, it

deliberated over its decision, and it then voted unanimously to adopt the SLC's recommendation. Eleven trustees took part in that vote, nine of those trustees are deemed to be "independent" as a matter of law, and all of those independent trustees voted to decline the Plaintiff's demand.

The Board's decision is entitled to great deference. In fact, because the Board assessed the Demand and decided not to take the actions it called for, the issue here is not whether Smith's legal theory has merit. Instead, the only issue is whether the Board acted in good faith and with reasonable care in declining the Demand. Furthermore, the burden is on Smith to show that the Board did not act properly. Smith's complaint makes no such showing. To the contrary, it concedes most of the key facts -- that the Board appointed the SLC, that the SLC retained independent counsel, that the SLC recommended to the Board that it refuse the Demand, and that a majority of the Trustees who voted to adopt that recommendation are independent. Because Plaintiff has not made any showing that the independent trustees wrongfully refused the Demand, Smith has failed to state a claim and the action must be dismissed.

## SUMMARY OF RELEVANT FACTS

### The Parties

The Trust is organized as a business trust under Massachusetts law. (Declaration of Mary Ann Tynan ["Tynan Decl."], Ex. 1 ["Compl."] ¶ 11.) It is classified under the ICA as an open-end investment management company. (Id.) It issues shares in three series or portfolios: Oppenheimer Small & Mid-Cap Value Fund, Oppenheimer Quest Opportunity Value Fund and Oppenheimer Quest Balanced Fund. (Id.) Plaintiff alleges that he owns Class C shares in the

Oppenheimer Small & Mid Cap Value Fund, and he purports to bring this action derivatively on behalf of the Trust.  (Id. ¶ 10.)

The Complaint names as defendants OppenheimerFunds Distributor, Inc. ("OFDI"), the Trust's distributor, and fourteen of the Trust's present and former trustees (collectively, the "Trustees").  (Id. ¶¶ 12-26.)  All but three of the Trustees are identified in the Complaint as being "independent" for purposes of the ICA.  (Id. ¶¶ 12-25.)

OFDI is a registered broker-dealer.  (Id. ¶ 26.)  The Trust has designated OFDI to provide services in connection with the distribution of the Trust's shares.  (Id.)  Besides authorizing OFDI to charge and retain sales charges, the Trust also pays to OFDI certain fees that are calculated as a percentage of a fund's net assets, (Id. ¶ 52), as is permitted by SEC Rule 12b-1, 17 CFR § 270.12b-1(b).

**The Demand**

By letter dated January 8, 2009, Smith's attorneys made a shareholder demand on the Board (the "Demand").  (Tynan Decl. Ex. 2.)  The Demand challenged the practice under which the Trust pays fees to OFDI, out of the assets of the Trust, in exchange for services that OFDI provides to the Trust in the sale and distribution of the Trust's shares.  OFDI, in turn, pays fees to broker-dealers in connection with their services for customers who hold shares of the Trust.  In the Demand, Smith claimed that unless the broker-dealer receiving such fees is also a registered investment adviser, the payment of such fees to broker-dealers is unlawful under the Investment Advisers Act of 1940 and as a result of a ruling by the U.S. Court of Appeals for the District of Columbia Circuit in Financial Planning Ass'n v. SEC, 482 F.3d 481, 483 (D.C. Cir. 2007) (the "Financial Planning Decision").  (Id.)

The fees that Smith questions had been reviewed by the Board; the amounts of the fees had been calculated according to formulas that were permitted by Rule 12b-1 of the U.S. Securities and Exchange Commission; and the practice of paying the fees had been established by a "Rule 12b-1 Plan" which the Trust's shareholders had approved and the details of which were disclosed in the Trust's prospectus. (Tynan Decl. ¶ 5.) Nevertheless, Smith contended that present and former Trustees had acted with "malfeasance and/or failed to properly exercise adequate oversight" in approving the payment of these "Rule 12b-1 Fees" to broker-dealers, and he charged that this had "caused waste and injury" to the Trust and "reduced shareholders' investment returns." (Id. Ex. 2.) Smith demanded that the Trustees immediately cause the Trust to "cease funding or permitting payments" of Rule 12b-1 Fees to broker-dealers in connection with Trust shares held in brokerage accounts in the United States, and to take "all reasonable and necessary steps" to restore to the Trust all past payments of those Fees. (Id.)

**The Board Forms a Special Litigation Committee**

At a meeting held on January 28, 2009, the Board decided to refer the Demand to its Audit Committee, and the Board authorized the Audit Committee to retain independent counsel to assist the Committee. (Tynan Decl. ¶ 6; Ex. 3.) On February 17, 2009, the Board approved the retention of the law firm of Davis Polk & Wardwell LLP to act as independent counsel in connection with the Demand. (Id.; Ex. 4.)

After consulting with the Davis Polk firm, the Board decided to appoint a Special Litigation Committee ("SLC") to investigate the Demand, and the Board further decided that the SLC should not include Board members who had taken part in the decisions being challenged. (Id. ¶ 7.) Thus, on March 27, 2009, the Board unanimously adopted a resolution to form an SLC

with Ms. Tynan as its member, and the Board directed the SLC to assume responsibility for the investigation, including a reasonable inquiry into the facts and law relating to the Demand.  (Id. ¶ 8; Ex. 5.)  All six members of the Board were present at that meeting.  (Id.)  Five of those Board members (including Ms. Tynan) were independent.  (Id.)  At no time did the Board limit the SLC's investigation in terms of time, cost, scope or otherwise.  (Id.)

Since 1970, Ms. Tynan has held positions of responsibility in the financial services industry, with an emphasis on mutual funds.  (Id. ¶ 2.)  Over the course of approximately 25 years, she served as a senior vice president, partner, and director of Regulatory Affairs of Wellington Management Company, LLP, a global investment management firm with assets currently under management in excess of $560 billion.  (Id.)  She also was a vice president, corporate secretary, and the senior administrative officer of John Hancock Advisers, Inc., which served as the investment adviser to the John Hancock group of mutual funds.  (Id.)

In addition, Ms. Tynan has been a member of a number of national-level professional associations that review regulatory and other policy issues affecting the financial services industry.  (Id. ¶ 3.)  For example, she served as the Chair of the Program Planning Committee of the Investment Company Institute, a national association representing the U.S. mutual fund industry.  (Id. ¶ 2.)  She also has been a member of the Board of Governors and the Legal Regulatory Committee of the Investment Counsel Association of America, a member of the Investment Companies Committee of NASD Regulation, Inc., and a member of the Board of Directors of the National Investment Company Service Association.  (Id. ¶ 3.)

The Board authorized the SLC to retain independent counsel to assist in the SLC's investigation.  (Id. ¶ 9.)  The SLC ultimately retained the law firm of Schulte Roth & Zabel LLP

("SRZ"), principally because its lawyers have had extensive experience in working on regulatory issues involving mutual funds and other financial services firms. (Id.) Kenneth S. Gerstein and Robert J. Ward led the SRZ team. (Id.)

Mr. Gerstein's practice focuses on representing investment advisers, broker-dealers and banks in connection with the organization and operation of investment funds, including mutual funds, hedge funds and closed-end investment companies. (Id. ¶ 10; Ex. 6.) He regularly advises clients on a broad range of securities regulatory and compliance matters. (Id.) Before entering private practice, Mr. Gerstein served as special counsel in the SEC's Division of Investment Management in Washington, D.C. and he is a member of the American Bar Association's Committee on Federal Regulation of Securities and its subcommittee on Investment Companies and Investment Advisers. (Id.)

Mr. Ward's practice focuses on commercial and securities litigation and he has represented major corporations, commercial banks, investment banks, private equity firms and other business entities in complex commercial and securities litigation. (Id. ¶ 11; Ex. 7.)

SRZ undertook to gather the key facts and to research the relevant legal principles. So that it could understand the facts, SRZ requested, obtained, and reviewed documents concerning the design and implementation of the Trust's Rule 12b-1 Plan. (Id. ¶ 12; Ex. 8.) These documents included:

- The approvals and renewals by the Board of the Trust's distribution agreements with OFDI, and the Trust's Rule 12b-1 Plans (together, "Distribution Documents");

- Board meeting agendas, minutes and other materials concerning the Distribution Documents;

- Documents relating to the Board's duties in approving and renewing Distribution Documents and concerning services to be provided by broker-dealers that sell shares of the Trust ("Selling Dealers") pursuant to their agreements with OFDI;

- Copies of Distribution Documents and Selling Dealer Agreements;

- Communications with the Trust's investment adviser pertaining to the Distribution Documents, payments made to Selling Dealers, and the services provided by Selling Dealers; and

- Other materials pertaining to the distribution agreements, payments made by the Trust, the investment adviser or OFDI to Selling Dealers or the nature of the services provided by Selling Dealers.

(Id.)

On September 17, 2009, Ms. Tynan reported in an executive session of the independent Trustees on the status of the SLC's investigation. (Id. ¶ 13; Ex. 9.) In November 2009, SRZ completed its analysis and presented its findings and conclusions to the SLC. (Id. ¶ 14.) SRZ based those conclusions on its review of, among other things, the documents relating to the Trust's Rule 12b-1 Plan; the law and regulations governing the payment of Rule 12b-1 Fees to broker-dealers, including the federal securities laws, SEC releases and the Financial Planning Decision; and the legal arguments Smith presented in a nearly identical shareholder derivative action he had filed purportedly on behalf of the Franklin Custodian Funds, in which he also challenged those funds' payment of fees to broker-dealers under Rule 12b-1 Plans. (Id.) Specifically, Smith claimed there, as he later did here, that those payments violate Section 47(b) of the Investment Company Act to the extent the broker-dealer recipients have not registered as investment advisers. (Id.)

SRZ provided the SLC with a detailed written statement of the reasons that led it to conclude that the charges which Smith had made in his Demand were not valid.  (Id. ¶ 15.)  In brief, SRZ concluded that:

- As long as certain specified requirements are met, SEC Rule 12b-1 permits a fund to act as a distributor of its securities and to use a percentage of the fund's assets to pay for the costs of distributing the fund's shares.  The principal requirements are that the payments be made, as Rule 12b-1 puts it, "pursuant to a written plan describing all material aspects of the proposed financing of distribution" and that all agreements with any person relating to implementation of the plan also be in writing.

- The Trust has adopted Rule 12b-1 Plans and entered into distribution agreements that meet the requirements of the Rule.  Thus, the Trust is authorized to pay and has paid Rule 12b-1 Fees directly to OFDI.  OFDI, in turn, is authorized to pay, and has paid under its Rule 12b-1 Plans, a portion of its Rule 12b-1 Fees to retail broker-dealers.

- The Demand did not state a viable claim, because there is no private right of action under Section 47(b) of the ICA.

- The Financial Planning Decision has no effect on the Trust's payments to OFDI or on OFDI's payments to retail broker-dealers under its Rule 12b-1 Plans.  That is because the Decision did not involve Rule 12b-1 Fees and made no substantive findings about the SEC's prior guidance concerning such fees.

- Even if the Financial Planning Decision were read to apply to Rule 12b-1 Fees and were to require broker-dealers receiving such fees to register as investment advisers, then only the broker-dealers that did not so register (and thus not a fund's distributor or trustees) could be held to account for the failure of the broker-dealers to register.

(Id.)

**The SLC Recommends that the Board Decline
to Take the Actions that Smith Had Demanded**

The SLC reviewed the analysis with SRZ, and satisfied itself that SRZ had thoroughly considered the issues.  (Id. ¶ 16.)  After reviewing SRZ's work, the SLC concluded that it should

recommend to the full Board that it decline the Demand.  (Id.)  On November 12, 2009, the SLC
presented that recommendation to the full Board.  (Id. ¶ 16; Ex. 10.)  All eleven persons who
were then Trustees attended that meeting.[1]  (Id.)  Nine of them (Messrs. Fink, Griffiths, Miller,
Motley, Wikler, Wold, Wruble, Downes and Ms. Tynan) were deemed to be "independent"
Trustees under the ICA.  (Id.)  Two of the Trustees who were present at the meeting (Messrs.
Reynolds and Murphy) were deemed to be "interested" under the ICA.  (Id.)

**The Board Adopts the SLC's Recommendation**

The SLC described for the Board the issues that the Demand had raised, as well as the
work that SRZ had performed, the discussions it had conducted with SRZ concerning their work,
the conclusions that SRZ had reached, and the reasons for the SLC's recommendation.  (Id. ¶
17.)  The Board of Trustees asked the SLC questions about the conclusions SRZ reached and
about the SLC's recommendation.  (Id.)  After a thorough deliberation on the matter, the Board
unanimously adopted a resolution refusing the Demand, and directing the Trust's secretary to
advise Smith of the Board's decision.  (Id. ¶ 17; Ex. 10.)  Nine of the eleven Trustees who voted
to adopt the resolution refusing the Demand were disinterested and independent under the ICA.
(Id.)

**Plaintiff Files this Derivative Action**

On or around March 19, 2010, Plaintiff filed the Complaint purportedly on behalf of the
Trust.  The Complaint alleges that the Trust's 12b-1 Plans are unlawful and should be voided,
because they permit the payment of Rule 12b-1 Fees to broker-dealers that have not registered as

---

[1]  Between the date on which the Board voted to form the SLC and the date of the November 12, 2009 meeting,
the Board added five new members.

investment advisers.  (Compl. ¶¶ 66-72.)  Based on this allegation, the Complaint asserts claims

against OFDI under the ICA and for breach of contract, and claims against the Trustees for

breach of fiduciary duty and waste.  (Id.  ¶¶ 73-89.)


## ARGUMENT

## I.

### THIS ACTION MUST BE DISMISSED
### BECAUSE PLAINTIFF HAS FAILED TO SHOW THAT
### THE TRUSTEES ACTED IMPROPERLY IN REFUSING THE DEMAND

Rule 23.1 of the Federal Rules of Civil Procedure imposes a "demand requirement" on all

shareholder derivative plaintiffs.  Kamen v. Kemper Fin. Servs. Inc., 500 U.S. 90, 96 (1991).

This rule recognizes that a derivative claim is a "legal right vested in the corporation," and that

the directors should be afforded "an opportunity to exercise their reasonable business judgment"

and waive that right "in the belief that its best interests will be promoted by not insisting on such

right."  Id. (citation and internal quotation marks omitted).

To give effect to this policy, Rule 23.1 provides that when a shareholder has made the

required demand, his derivative complaint must "state with particularity . . . the reasons for not

obtaining the action" demanded.  Fed. R. Civ. P. 23.1(b)(3)(B).  If the complaint fails to make

that showing, it will be dismissed.

Where a board has refused a shareholder's demand, the plaintiff must make a

particularized showing that the directors failed to act properly.  As one federal court recently put

it:  To "withstand a motion to dismiss under Rule 23.1, the plaintiff must allege particular facts"

demonstrating that the directors' refusal of his demand "was not made in an informed manner,

with due care, and in a good faith belief that refusing to pursue the litigation demanded on was in the best interest of the corporation." Furman v. Walton, 2007 WL 1455904, at *3 (N.D. Cal. May 16, 2007, aff'd, 320 F. App'x 638 (9th Cir. 2009).

For guidance as to whether directors have acted properly in refusing a shareholder's demand, the federal courts look to the substantive law of the company's state of incorporation. Kamen, 500 U.S. at 100-01. The Trust is organized under Massachusetts law, which holds that "a disinterested board of directors that has refused a plaintiff's pre-suit demand is entitled to the protection of the business judgment rule." Harhen v. Brown, 431 Mass. 838, 844-45, 847 (2000).

If the board that refused the shareholder demand was disinterested, then to escape the business judgment rule, the plaintiff must show that the demand was "wrongfully refused." Id. at 844. This means that the plaintiff "must allege facts that challenge the board's good faith or the reasonableness of the board's investigation of the plaintiff's demand." Id at 845. In Harhen, for example, a shareholder whose demand had been refused alleged only that the corporation had failed to demonstrate that it investigated the demand thoroughly. Id at 848. The court found that this was not an adequate allegation of "wrongful refusal," and it affirmed the dismissal of the derivative action. Id.

In 2004, Massachusetts amended its corporation law and codified the business judgment rule as it applies to a corporate board's rejection of a shareholder demand. See Mass. Gen. Laws ch. 156D, § 7.41 (2010), et seq. (the "Statute"). The Statute provides that when "a majority vote of independent directors" has "determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in

the best interests of the corporation," then the court "shall" dismiss the derivative proceeding. Mass. Gen. Laws ch. 156D, § 7.44(a) and (b)(1) (2010) (emphasis added); see also Mass. Gen. Laws ch. 156D § 7.44 cmt. 2 (2010) ("Section 7.44 . . . appl[ies] the business judgment rule when a majority of the board is independent (which would include the situation presented in Hahren), with the burden of proof being on the plaintiff . . . ."). The Statute has been held to apply both to corporations and to business trusts. See ING Principal Protection Funds Derivative Litig., 369 F. Supp. 2d 163, 171 (D. Mass. 2005).[2]

Thus the questions for the Court are only whether the Plaintiff has sufficiently alleged that a majority of the board was not "independent" and that the board did not act in "good faith" to conduct a "reasonable inquiry." As to the first question, the Complaint itself makes clear that the Board was independent. It alleges that all but two of the eleven Trustees who voted to refuse the Demand were "independent board member[s] for purposes of the ICA." (Compl. ¶¶ 12-25.) Under Massachusetts statutory law, a trustee of a business trust who is "independent" for purposes of the ICA is "independent and disinterested when making any determination or taking any action as a trustee." Mass. Gen. Laws ch. 182, § 2B (2010); see Forsythe v. Sun Life Financial, Inc., 417 F. Supp. 2d 100, 109-10 (D. Mass. 2006) (applying the statute). In other words, by pleading that a majority of the Board is independent within the meaning of the ICA, Plaintiff concedes that the majority of the Board was independent and disinterested when it refused the Demand.

---

[2]    If a corporation forms a special litigation committee "consisting of 2 or more independent directors" to investigate a pre-suit demand, the Statute requires the committee to determine whether maintenance of a derivative action is in the best interests of the corporation. Mass. Gen. Laws ch. 156D, § 7.44(b)(2) (2010). Here, the determination whether refuse the Demand was properly made by a majority of the independent Trustees because the SLC was comprised of only one member.

As to the second question, the Complaint alleges no facts that challenge the Board's good faith or the reasonableness of its investigation. <u>Harhen</u>, at 845. Instead, the Complaint alleges in the most conclusory manner possible and without a single supporting fact that the "board's response to the demand is a wrongful refusal to act" and "no business judgment is involved" in the decision. (Compl. ¶ 65.) These conclusory allegations not only fail to show that the Demand was wrongfully refused, they are contradicted by other allegations in the Complaint. <u>See, e.g.</u>, <u>E.F.W. v. St. Stephen's Indian High School</u>, 264 F.3d 1297, 1306 (10th Cir. 2001) (affirming dismissal of claims where complaint contained only conclusory allegations that "are not only unsupported by any factual allegations but are in fact contradicted by the factual allegations plaintiffs do make.").

For example, the Complaint acknowledges that in response to the Demand, the Board retained independent counsel to advise it and formed a special litigation committee to investigate the issues raised in the Demand. (Compl. ¶¶ 61-64.) But that is not all the Board did. Among other things:

- Ms. Tynan, the sole member of the SLC, had not voted on the Rule 12b-1 Plan challenged in the Demand.

- Ms. Tynan has extensive experience in the financial services industry and, in particular, with mutual funds.

- The SLC retained independent counsel, SRZ, who were themselves highly experienced in advising mutual funds.

- SRZ requested, obtained, and reviewed documents concerning the design and implementation of the Trust's Rule 12b-1 Plan.

- SRZ reviewed and considered the law and regulations governing the payment of Rule 12b-1 fees to broker-dealers, including the federal securities laws, SEC releases and the <u>Financial Planning</u> Decision.

- SRZ reviewed and considered the legal arguments Smith presented in a nearly identical shareholder derivative action he had filed purportedly on behalf of the Franklin Custodian Funds.

- SRZ reported its findings of fact and conclusions of law to the SLC.

- The SLC reviewed those findings and conclusions with SRZ and, only after it satisfied itself that SRZ had thoroughly considered the issues raised in the Demand, did it recommend that the full Board not take the action demanded by Plaintiff.

- The Board carefully considered the SLC's recommendation.  When the Board decided whether to accept that recommendation, a majority of the participating Board members were independent.  Those independent Trustees voted unanimously to adopt the recommendation.

These facts show that the Board acted in good faith and conducted a reasonable inquiry into the demand.  A more recent fact proves this point even further.

Only weeks ago, a federal District Court dismissed this plaintiff's essentially identical challenge to the Rule 12b-1 Fees that the Franklin Custodian Funds pay under their Rule 12b-1 Plan.  Smith v. Franklin/Templeton Distrib., Inc., No. C 09-4775, 2010 WL 2348644, at *6-*7 (N.D. Cal. June 8, 2010).  Just as the SLC and its independent counsel concluded here, the court in Franklin/Templeton held that the Financial Planning Decision "is irrelevant to the payment of the distribution fees (known as '12b-1 fees') that plaintiff challenges . . . ."  Id. at *8.  In Franklin/Templeton, the court outlined some of the many differences between the fees that were at issue in Financial Planning and the Rule 12b-1 Fees that were at issue in Franklin/Templeton and that are at issue here.  Id.  The court held that "the fees that were being paid to the broker-dealers in the Financial Planning case were for services to customers, including fees for investment advice."  Id.  By contrast, in Franklin/Templeton, "the fees paid under SEC Rule 12b-1 are fees paid by a fund . . . in connection with the distribution of fund shares."  Id.  The court in

Franklin/Templeton further explained that "Financial Planning . . . did not discuss Rule 12b-1 fees; and even if the Financial Planning decision applied to Rule 12b-1 fees, that would not have meant that the payment of such fees violated" the Investment Advisers Act ("IAA").  It would mean only "that the broker-dealers who received such fees would be required to register under the IAA." Id.  Thus, just as the SLC did here, the court in Franklin/Templeton concluded that nothing in the Financial Planning Decision barred the payment of Rule 12b-1 Fees that had been set according to properly drafted and approved Rule 12b-1 Plans.

The fact that the court in Franklin/Templeton came to that view on a motion to dismiss -- simply from reading the face of Smith's complaint -- surely shows that the SLC and the Board in this case were reasonable in their inquiry and in their conclusion.  Accordingly, this action must be dismissed.

## CONCLUSION

For all of these reasons, the Trust respectfully requests that the Court enter an order dismissing the action in its entirety and with prejudice.

Dated:  New York, New York
       July 1, 2010

Respectfully submitted,

 s/ Edward T. Lyons, Jr.
Jones & Keller, P.C.
1999 Broadway, Suite 3150
Denver, CO 80202
Tele: (303) 573-1600
Fax: (303) 573-8133
Email: elyons@joneskeller.com

And

 s/ Arthur H. Aufses, III
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Tele: (212) 715-9100
Fax: (212) 715-8000
Email: aaufses@kramerlevin.com

**Attorneys for Nominal Defendant**
Oppenheimer Quest for Value Funds

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2010, I electronically filed a true and correct copy of the foregoing **MOTION OF NOMINAL DEFENDANT OPPENHEIMER QUEST FOR VALUE FUNDS TO DISMISS THE COMPLAINT UNDER RULES 12(b)(6) AND 23.1 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MASS. GEN. LAWS CH. 156D, § 7.44** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Jeffrey A. Chase**
  jchase@jcfkk.com,vlsanders@jcfkk.com

- **William K. Dodds**
  william.dodds@dechert.com,luis.lopez@dechert.com

- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com

- **David A. Kotler**
  david.kotler@dechert.com

- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com

- **Andrew Wilson Myers**
  amyers@jacobschase.com,cjones@jacobschase.com

- **Janine Lee Pollack**
  jpollack@milberg.com

- **Lauren Block**
  lblock@milberg.com

- **Michael Champlin Spencer**
  mspencer@milberg.com

I hereby certify that I have also served the foregoing on the following via regular United States mail, first class postage prepaid:

- Oppenheimer Quest for Value Funds
  6803 S. Tucson Way
  Centennial, CO 80112

s/ Edward T. Lyons, Jr.