**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge John L. Kane**

Civil Action No. 10-cv-00654-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of OPPENHEIMER QUEST FOR VALUE FUNDS,

       Plaintiff,

v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH H. WIKLER
PETER I. WOLD,
BRIAN F. WRUBLE,
DAVID K. DOWNES,
RUSSELL S. REYNOLDS, JR.,
WILLIAM F. GLAVIN,
THOMAS W. COURTNEY,
LACY B. HERRMANN, and
JOHN V. MURPHY,

       Defendants,

OPPENHEIMER QUEST FOR VALUE FUNDS,

       Nominal Defendant.

---

**PLAINTIFF'S OPPOSITION TO TRUSTEE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT UNDER RULES 12(b)(2), 12(b)(3) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND UNDER 28 U.S.C. §1406(a)**

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND ......................................................................................3

ARGUMENT .............................................................................................................5

I.  THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT TRUSTEES ............................................................................................................5

II.  VENUE IS PROPER IN THIS DISTRICT ................................................................11

    A.  Venue Is Proper in This District Pursuant to 28 U.S.C. § 1391(b)............11

    B.  The Forum Selection Clause Is Not Enforceable.......................................12

III.  THE COMPLAINT ADEQUATELY ALLEGES STATE LAW CLAIMS AGAINST THE TRUSTEES ....................................................................................................17

    A.  Plaintiff Is Only Required to Plead a Plausible Claim for Relief .............17

    B.  Plaintiff Has Pleaded Plausible Claims for Waste and Breach of Fiduciary Duty ........................................................................................18

    C.  The Exculpatory Clause Does Not Mandate Dismissal of Plaintiff's Breach of Fiduciary Duty Claim.............................................................22

CONCLUSION..........................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Archangel Diamond Corp. v. Lukoil*,
    123 P.3d 1187 (Colo. 2005)...........................................................................................6

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009).................................................................................................18

*AST Sports Science, Inc. v. CLF Distribution Ltd.*,
    514 F.3d 1054 (10th Cir. 2008) ...................................................................................5

*Astra USA, Inc. v. Bildman*,
    455 Mass. 116 (Mass. 2009) .......................................................................................18

*Brautigam v. Priest*,
    No. 99-365, 2000 U.S. Dist. LEXIS 3123 (D. Del. March 2, 2000) .........................11

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991)..............................................................................................13, 15

*Chao v. Ballista*,
    630 F. Supp. 2d 170 (D. Mass. 2009) ........................................................................18

*Continental Am. Corp. v. Camera Controls Corp.*,
    692 F.2d 1309 (10th Cir. 1982) ...................................................................................7

*Cory v. Axtec Steel Bldg., Inc.*,
    468 F.3d 1226 (10th Cir. 2006) .................................................................................10

*Curwood Inc. v. Prodo-Pak Corp.*,
    07-554, 2008 U.S. Dist. LEXIS 18295 (E.D. Wis. March 7, 2008) .........................16

*Erickson v. Pardus*,
    551 U.S. 89 (2007)......................................................................................................17

*Feldman v. Google, In*c.,
    513 F. Supp. 2d 229 (E.D. Pa. 2007) .........................................................................14

*Financial Planning Ass'n v. SEC*,
    482 F.3d 481 (D.C. Cir. 2007).................................................................................3, 10

*Goettman v. North Fork Valley Restaurant*
    176 P.3d 60 (Colo. 2007)..............................................................................................9

*Halliburton Co. v. Texana Oil Co.*,
471 F. Supp. 1017 (D. Colo. 1979) (Kane, J.) ........................................................8

*Hanover Ins. Co. v. Sutton*,
705 N.E. 2d 279 (Mass. App. Ct. 1999) ..............................................................19

*Helicopteros Nactionales de Columbia v. Hall*,
466 U.S. 408 (1984)..............................................................................................7

*Hendersen v. Axiam, Inc.*,
No. 962572D, 1999 WL 33587312 (Mass. Super. Ct. June 22, 1999) ............18, 19

*Holders of Tectonic Network, Inc. v. Wolford*,
554 F. Supp. 2d 538 (D. Del. 2008)....................................................................22

*Home Ins. Co. v. Thomas Indus. Inc.*,
896 F.2d 1352 (11th Cir. 1990) ..........................................................................11

*Intercontinental Leasing, Inc. v. Anderson*,
410 F.2d 303 (10th Cir. 1969) ..............................................................................9

*Krenkel* v. *Kerzner International Hotels Limited*,
579 F.3d 1279 (11th Cir. 2009) ..........................................................................13

*Milk 'N' More, Inc. v. Beavert*,
963 F.2d 1342 (10th Cir. 1992) ..........................................................................13

*Miller v. McCown De Leeuw & Co. (In re Brown Sch.)*,
368 B.R. 394 (Bankr. D. Del. 2007) ....................................................................22

*Minkin v. Commissioner of Revenue*,
680 N.E.2d 27 (Mass. 1997) ..............................................................................23

*In re Nat'l Auto Credit S'Holders Litig.*,
No. 19028, 2003 Del. Ch. LEXIS 5 (Del. Ch. Jan. 10, 2003) ..............................19

*In re Polymedica Corp. S'Holder Derivative Litig.*,
15 Mass. L. Rep. 115 (Mass. Super. Ct. 2002) ....................................................22

*New York v. Am. Electric Power Service*,
2:04-CV-1098, 2:05-CV-360, 2008 U.S. Dist. LEXIS 24892
(S.D. Ohio Mar. 29, 2006) ....................................................................................8

*Nicodemus v. Union Pacific Corp.*,
440 F.3d 1227 (10th Cir. 2006) ..........................................................................10

*OMI Holdings v. Royal Ins. Co. of Can.*,
149 F.3d 1086 (10th Cir. 1998) ........................................................................5, 6

*Panos v. Sullivan (In re Sabine, Inc.)*,
   No. 03-10888, 2006 Bankr. LEXIS 381 (Bankr. D. Mass. Feb. 27, 2006) ......................25, 26

*Patrick v. Allen*,
   355 F. Supp. 2d 704 (S.D.N.Y. 2005)...................................................................................18

*Pegasus Transportation v. Lynden Air Freight*,
   152 F.R.D. 574 (N.D. Ill. 1993)...........................................................................................17

*Phillips v. Audio Active, Ltd.*,
   494 F.3d 378 (2d Cir. 2007)..................................................................................................13

*Production Mach. Co. v. Howe*,
   99 N.E. 2d 32 (Mass. 1951) ..................................................................................................21

*QFA Royalties, LLC v. Majed*,
   No. 06 01506, 2006 U.S. Dist. LEXIS 87445 (D. Col. Dec. 1, 2006)...................................13

*Rambo v. Am. Southern Ins. Co.*,
   839 F.2d 1415 (10th Cir. 1988) ...........................................................................................7, 8

*Rittenmeyer v. Grauer*,
   104 S.W.3d 725 (Tex. Ct. App. 2003) ...................................................................................10

*Robinson v. Watts Detective Agency*,
   685 F.2d 729 (1st Cir. 1982)..............................................................................................21, 22

*Shepherd v. U.S. Olympic Comm.*,
   94 F. Supp. 2d 1136 (D. Colo. 2000).......................................................................................9

*Stanziale v. Nachtomi (In re Tower Air, Inc.)*,
   416 F.3d 229 (3d Cir. 2005)..................................................................................................22

*State Street Trust Co. v. Hall*,
   41 N.E.2d 30 (Mass. 1942) ...................................................................................................23

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)................................................................................................................16

*Swartz v. Sher*,
   184 N.E.2d 51 (Mass. 1962) .................................................................................................23

*Systematic v. Underwood*,
   No. 06-118, 2006 WL 1766179 (D. Or. June 22, 2006) .........................................................8

*In re Taser Int'l S'holder Derivative Litig.*,
   No. 05-123, 2006 U.S. Dist. LEXIS 11554 (D. Ariz. Mar. 17, 2006)....................................23

*Ten Mile Indus. Park v. Western Plains Serv. Corp.*,
  810 F.2d 1518 (10th Cir. 1987) ...................................................................10

*The Cascade Fund, LLLP v. Absolute Capital Mgmt Holdings, Ltd.*,
  No. 08-cv-01381, 2010 WL 1380389 (D. Colo. Mar. 31, 2010) ...............................9

*Trierweiler v. Croxton and Trench Holding Corp.*,
  90 F.3d 1523 (10th Cir. 1996) ...................................................................8

*Tripoli Mgmt., LLC v. Waste Connections of Kan., Inc.*,
  09-01767, 2010 U.S. Dist. LEXIS 21749 (D. Colo. Mar. 2, 2010) ...........................9

*Vision Technology Design & Mft., Inc. v. General Wire Spring Co.*,
  No. 07 412, 2007 U.S. Dist. LEXIS 54046 (E.D. Cal. July 17, 2007) ......................17

*Wallace v. Int'l Lifestyles, Inc.*,
  No. 06-1468, 2008 WL 623811 (E.D. Pa. Mar. 6, 2008) ...................................8

*Wenz v. Memery Crystal*,
  55 F.3d 1503 (10th Cir. 1995) ...................................................................5

*Zanetis v. Calder Bros. Corp.*,
  No. 09-0025, 2009 U.S. Dist. LEXIS 94406 (S.D. Ind. Oct. 9, 2009) ......................7

### STATUTES

8 Del. Code § 102(b)(7) .............................................................................25

15 U.S.C. § 80a-43 ...................................................................................11

17 C.F.R. § 270.31a-1(4) ..........................................................................5, 6

17 C.F.R. § 270.38a-1(a)(4) .......................................................................9

17 C.F.R. § 270.38a-1(a)(4)(i)-(ii) .............................................................7

28 U.S.C. § 1391(b) .................................................................................11

28 U.S.C. § 1391(b)(2) ..............................................................................12

Fed.R.Civ.P 12(b)(2) ................................................................................5

Mass. Gen. Laws ch. 156D, § 2.02(b)(4) .....................................................24

Section 214 of the Advisers Act, 15 U.S.C. § ..............................................11

Section 31(a) of the Investment Company Act of 1940 ...................................4

Plaintiff Bradley C. Smith, suing derivatively on behalf of Oppenheimer Quest for Value Funds (the "Trust"), respectfully submits this opposition to the motion to dismiss ("Trustees Mot.") filed by the individual defendants (the "Trustees").  Plaintiff incorporates by reference the arguments made in (a) his opposition, filed June 17, 2010, to the motion to transfer venue by defendant OppenheimerFunds Distributor, Inc. ("OppenheimerFunds Distributor") and the Trustees; (b) his opposition, filed concurrently herewith, to the motion to dismiss filed by defendant OppenheimerFunds Distributor and interested Trustees; and (c) his opposition, filed concurrently herewith, to the motion to dismiss filed by nominal defendant Oppenheimer Quest for Value Funds (the "Trust").

## PRELIMINARY STATEMENT

The Trustees acknowledge that the Trust on whose board they sit "does not have any employees or its own office space" and relies entirely on its investment adviser, distributor, and transfer agent to conduct its business.  Trustees Mot. at 3.  The Trustees further acknowledge that the Trust's day-to-day activities are carried out by the investment manager the Trust hired and supervises, OppenheimerFunds, Inc. ("OppenheimerFunds").  *Id.*  Both the investment manager and the distributor, defendant OppenheimerFunds Distributor, have substantial operations in Centennial, in this District.

Incredibly, the Trustees assert that even though everything *real* concerning this lawsuit has happened in Colorado, this Court lacks personal jurisdiction over them, and "no part of the events giving rise to the claims asserted" against them occurred in this District.  *Id.* at 2.  The Trustees acknowledge that they list Centennial business addresses in their filings with the SEC and the Massachusetts Secretary of State.  The conclusion is inescapable that the Trustees *must* be in communication with persons working out of the offices of OppenheimerFunds and

OppenheimerFunds Distributor, because those are the only entities that carry on the activities of the Trust -- and those offices are primarily in Centennial.

The Trustees' position is that since they reside in or around New York and hold their board meetings there or by telephone, they lack sufficient contact with Colorado to support personal jurisdiction here.  That escapist attitude does not comport with the law of personal jurisdiction or venue as applicable to this lawsuit.  As shown below, by accepting Trustee positions with a Trust whose major activities are carried out in this District, by listing their business addresses here in formal regulatory filings, by inevitably interacting with the employees of the entities that entirely carry out the Trust's activities in performing their Trustee duties, and by engaging in Trustee decision-making that must be based on communications to and from those entities, the Trustees have made themselves subject to personal jurisdiction here -- certainly according to the "light burden" applicable to plaintiffs' required showing at this stage of the litigation.

Similarly, as shown in plaintiff's opposition to defendants' previous motion to transfer venue, all relevant factors point toward this District as the proper venue for the lawsuit.  The charter forum selection clause is not applicable or enforceable.  The Trustees' idea that the events giving rise to the claim at issue did not occur in this District is equally fanciful, as described more fully below.

Finally, the Trustees' argument that the Complaint does not sufficiently plead breach of fiduciary duty and waste against the Trustees who have given their ongoing approval to the asset-based compensation payments at issue, which plaintiff clearly claims violate federal law, is difficult to fathom.  Even if the Trustees' assertion that plaintiff must show willful malfeasance, bad faith, gross negligence or reckless disregard on the part of the Trustees (based on a charter

exculpatory clause that plaintiff contends is unenforceable) were accepted, plaintiff's allegation that the Trustees have continued to approve the payments at issue after the decision in *Financial Planning Ass'n v. SEC,* 482 F.3d 481 (D.C. Cir. 2007), and even after plaintiff issued his demand in this case, at least satisfies plaintiff's pleading burden.  Whether the Court agrees that the payments are *in fact* unlawful remains to be seen, but the Trustees cannot properly seek a procedural exit from this case before that determination is even made.

## FACTUAL BACKGROUND

Each of the Trustees has a business address at 6803 Tucson Way in Centennial.  *See* Zack Decl. at ¶ 6.  The Trust's SEC and Massachusetts registrations also list a Colorado address for all of the Trustees except the officer Trustee, who is listed with a New York address.  The Trust says it itself has no offices or employees and operates entirely through its manager, distributor, and transfer agent.  The manager, OppenheimerFunds, carries out the Trust's principal day-to-day business activities (Trustee Mot. at 3).  The person who serves as the chief compliance office (CCO) for the Trust resides and works in Centennial.  The adviser and the CCO are located in Centennial.  *See* Ex. 3 to the Pollack Decl.  One of the CCO's duties is to prepare and deliver quarterly and annual reports to the Trustees on the use of Trust assets to make compensation payments to broker-dealers -- the subject matter of this action.  *Id.*  The Trustees admit to telephone calls with employees of OppenheimerFunds, *see* Zack Decl. at ¶¶ 3, 8 -- how could they not?  According to the Trust, those persons are the only relevant actors for the Trust, other than the Trustees themselves.

Oppenheimer has 1,300 of its 2,380 employees[1] at its main Centennial campus.  The Centennial campus is a massive office complex with "OppenheimerFunds Distributor, Inc." prominently appearing on the sign at the main street entrance.  *See* Declaration of Rosemary Haire, dated June 17, 2010 (Docket #25) (attaching photographs of Oppenheimer's Centennial campus taken June 11, 2010).  These employees are performing functions including staffing the compliance department[2] (including the CCO for both the Trust and OppenheimerFunds Distributor),[3] the accounting department, which administers the payments at issue, the broker-dealer servicing unit (which coordinates the retail broker-dealer firms' marketing and legal compliance to Oppenheimer's standards),[4] and other functions directly relevant to this litigation.[5]

The Trust's SEC registration statement states:

Item 33.  Location of Accounts and Records

The accounts, books and other documents required to be maintained by Registrant pursuant to Section 31(a) of the Investment Company Act of 1940 and rules promulgated thereunder are in the possession of OppenheimerFunds, Inc. at its offices at 6803 South Tucson Way, Centennial, Colorado 80112-3924.

---

[1] *See* "Profile: OppenheimerFunds" (retrieved from the Internet on June 12, 2010), Ex. 1 to the Declaration of Janine L. Pollack, dated June 17, 2010 (Docket # 26) ("Pollack Decl.") submitted herewith; and Bloomberg News (Jan. 29, 2009), Ex. 2 to Pollack Decl.

[2] A current OppenheimerFunds job posting for an Executive Assistant position in the compliance department in Colorado describes functions such as "assisting in the preparation of delivery of quarterly and annual Board of Director Reports from the SVP/Chief Compliance Officer" and other activities and compliance procedures discussed in the Complaint in this case.  *See* Ex. 3 to Pollack Decl. (job posting from monster.com retrieved from the Internet on June 12, 2010).

[3] *See* Ex. 4 to Pollack Decl. (list of officers of OppenheimerFunds Distributor).

[4] *See* "Broker-Dealer Questionnaire" (retrieved from the Internet on June 12, 2010), Ex. 5 to Pollack Decl.  The Broker-Dealer Questionnaire contains legal compliance oversight questions for broker-dealers that sell OppenheimerFunds, returnable to OppenheimerFunds' Denver-area fax number.  This and other similar documents are directly relevant to the allegations in the Complaint, as well as to defendants' denials that they do not conduct oversight of broker-dealers' legal compliance in the sale and servicing of Trust shareholders.

[5] *See also* "New Digs In Denver" from Oppenheimer's own web site (retrieved from the Internet on June 4, 2010) describing the company's Denver-area presence. Ex. 6 to Pollack Decl.

*See* Ex.7 to the Pollack Decl. (Form N-1A filed February 24, 2010).  The documents required to

be maintained include "minute books of. . . trustees' meetings" and "trustees' committee and

advisory board or advisory committee meetings" as well as the accounting records for the

payments at issue in this case.  17 C.F.R. § 270.31a-1(4).   Therefore, the documents relevant to

this case, including the Board of Trustees' meeting minutes, are in Colorado.

## ARGUMENT

### I.   THE COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANT TRUSTEES

#### A.   Plaintiff Bears Only a "Light Burden" in Establishing Personal Jurisdiction on This Motion

Plaintiff's burden of establishing personal jurisdiction on this motion is light.  *See OMI

Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Wenz v. Memery

Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995).  "When a district court rules on a Fed.R.Civ.P

12(b)(2) motion to dismiss. . . without holding an evidentiary hearing, as in this case, the plaintiff

need only make a prima facie showing of personal jurisdiction to defeat the motion."  *OMI

Holdings,* 149 F.3d at 1091; s*ee also AST Sports Science, Inc. v. CLF Distribution Ltd*., 514 F.3d

1054, 1057 (10th Cir. 2008) (same).  Once the light burden is met, a defendant must "present a

compelling case demonstrating 'that the presence of some other considerations would render

jurisdiction unreasonable.'"  *OMI Holding*s, 149 F.3d at 1091 (quoting *Burger King Corp. v.

Rudzewicz*, 471 U.S. 462, 477 (1985)).  If a factual dispute exists, it is resolved in plaintiff's

favor preliminarily, to be ultimately determined at trial.  *Wenz,* 55 F.3d at 1505; *see also AST

Sports*, 514 F.3d at 1057 (the court must resolve factual disputes in plaintiff's favor on motion to

dismiss for lack of personal jurisdiction).[6]

---

[6] The Trustees' argument that the Complaint fails to plead sufficient contacts in this District to
establish personal jurisdiction (Trustees Mot. at 11-12) is specious.  "[T]he Federal Rules,

**B.**     **The Trustees Have Sufficient Contacts in This District**
         **to Establish Personal Jurisdiction**

As set forth above, the Trustees list their business addresses in this District; deal

extensively with the actual persons and entities that conduct Trust activities in this District;

employ a CCO, located in this District, who is responsible for overseeing the Trust's activities,

including the payments at issue in this case; and maintain in this District the required "minute

books of . . . trustees' meetings" and "trustees' committee and advisory board or advisory

committee meetings," and accounting records for the Trust, *see* 17 C.F.R. § 270.31a-1(4).[7]  From

those actions, the Trustees created a "continuing obligation" in connection with Colorado.  *See*

*Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1194 (Colo. 2005).  A defendant's creation

of a such a continuing obligation has "been identified as a factor constituting purposeful

availment."  *Id.*  The continued contact shows that the Trustees "should [have] reasonably

anticipate[d] being haled into court" in Colorado.  *OMI Holdings* 149 F.3d at 1091 (citing

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

---

specifically Rule 8(a), do not even require that the complaint allege facts supporting personal jurisdiction, but only subject matter jurisdiction."  *Hagen v. U-Haul Co.*, 613 F. Supp. 2d 986, 1002 (W.D. Tenn. 2009) (citing *Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971)); *Blackmore v. LaCosse*, No. 85-6325, 1985 U.S. Dist. LEXIS 12677, at *4 (N.D. Ill. Dec. 17, 1985).  Regardless, now that the Trustees have raised the issue of personal jurisdiction, plaintiff may rely on affidavits and other written materials to set forth facts to support jurisdiction  *See, e.g., OMI Holdings*, 149 F.3d at 1091.

[7] Any argument by the Trustees that the specific claims asserted against them do not arise from any activities in Colorado is misplaced.  Their contacts do not have to relate to the facts forming the basis of the lawsuit because the Trustees may be sued in this forum, regardless of the subject matter of the litigation, under general personal jurisdiction.  *See, e.g., OMI Holdings*, 149 F.3d at 1091 ("Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state.") (citing *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 415 (1984)) (emphasis added).  The Trustees' reliance on *Melea, Ltd. v. Jawer*, 511 F.3d 1060 (10th Cir. 2007), is therefore unavailing.  In any event, most of the activities relating to this lawsuit did occur in this District.

Review of the Trust's CCO's activities further supports the exercise of personal jurisdiction over the Trustees.  The Trustees are responsible for approving the designation and compensation of the CCO for the Trust, who may be removed from his or her position "only with the approval of" the Trustees.  *See* 17 C.F.R. § 270.38a-1(a)(4)(i)-(ii).  The duties of the CCO include the preparation and delivery of quarterly and annual board of director reports.  *See* Ex. 3 to the Pollack Decl.  Thus, the Trustees necessarily spend time reviewing these reports and communicating with the CCO regarding their preparation and contents.  The Trustees could not perform their duties without extensive interaction with the CCO.  Needless to say, as stated above, the CCO is located in Colorado.

These types of "minimum contacts with the forum [are] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 216 (1945)).  In fact, the Tenth Circuit has noted that "[c]ertainly, telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction.  In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards."  *Rambo v. Am. Southern Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (internal citations omitted); *see also Continental Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982) ("It is fundamental that the mere quantum of contacts between the forum state and the defendant is not determinative of this issue.").  Courts have held that "even without physical presence in the state . . . mail communications may establish minimum contacts."  *Zanetis v. Calder Bros. Corp.*, No. 09-0025, 2009 U.S. Dist. LEXIS 94406, at *7-8 (S.D. Ind. Oct. 9, 2009); *Continental Am*, 692 F.2d at 1314 (in finding personal jurisdiction almost thirty years ago, the Tenth Circuit "recognize[d] that modern commercial transactions often involve

little contact with the forum beyond that of mail and telephone communications. . . and that defending a suit in a foreign jurisdiction is not as burdensome as in the past."); *Wallace v. Int'l Lifestyles, Inc*., No. 06-1468, 2008 WL 623811, at *8 (E.D. Pa. Mar. 6, 2008) (Florida address and phone number a key factor in determining existence of personal jurisdiction); *Systematic v. Underwood*, No. 06-118, 2006 WL 1766179, at *3 (D. Or. June 22, 2006) (use of Oregon address on official business documents shows purposeful availment of the Oregon forum); *New York v. Am. Electric Power Service*, 2:04 CV 1098, 2:05-CV-360, 2008 U.S. Dist. LEXIS 24892, at *25 (S.D. Ohio Mar. 29, 2006) (the listing of a Columbus, Ohio mailing addresses in SEC filings supported a finding of personal jurisdiction in the Southern District of Ohio, and "indicat[ed] [the company's] own recognition of [that] District as a base of operations").  Even telephone conversations can confer jurisdiction upon an out-of-state defendant, if such conversations "cause[] important business consequences in this state."  *Halliburton Co. v. Texana Oil Co*., 471 F. Supp. 1017, 1019 (D. Colo. 1979) (Kane, J.).[8]  The proper focus for analyzing these contacts is whether they represent an effort by the defendant to "'purposefully avail[ ] itself of the privilege of conducting activities within the forum state.'"  *Rambo*, 837 F.2d at 1417  (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1533 (10th Cir. 1996) (in determining personal jurisdiction, courts consider factors such as the extent to which a defendant holds itself out as doing business in the forum state through address listings).

---

[8] In *Halliburton*, the out-of-state defendant participated in telephone negotiations from Texas with the plaintiff and a co-defendant who was meeting with the plaintiff in Colorado.  *Id.*  Pursuant to the negotiations, he signed a promissory note and personal guaranty from his domicile of Texas.  *Id.*   The plaintiff sued to enforce the promissory note and this Court held that "personal jurisdiction extends to telephone conversations involving the transaction of business within the forum."  Based on the defendant's participation in "critical telephone conversations," which "caused important business consequences" in Colorado, this Court ruled that the defendant's contacts with Colorado were "sufficient and substantial enough" to render the assertion of jurisdiction "both fair and reasonable."  *Id.*

The conduct of business by agents of the Trustees in this state also may establish personal jurisdiction.  *See  Tripoli Mgmt., LLC v. Waste Connections of Kan., Inc.*, 09-01767, 2010 U.S. Dist. LEXIS 21749, at *12 (D. Colo. Mar. 2, 2010) ("[U]nder Colorado's agency law the contacts of an agent can be imputed to the principal for purposes of personal jurisdiction."); *Shepherd v. U.S. Olympic Comm.*, 94 F. Supp. 2d 1136, 1142 (D. Colo. 2000) ("The contacts of an agent may generally be imputed to the principal if those contacts are made within the scope of the agent's employment); *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 67 (Colo. 2007) ("[A] nonresident defendant may be subject to personal jurisdiction in Colorado based on the imputed contacts of the defendant's agent.").  Here, the Trustees appoint and remove the CCO and determine his or her compensation, and the CCO reports to the Trustees, making the CCO an agent of the Trustees.  *See* 17 C.F.R. § 270.38a-1(a)(4).  Thus, the CCO's actions in Colorado are attributable to the Trustees for the purpose of establishing personal jurisdiction.  *See Intercontinental Leasing, Inc. v. Anderson*, 410 F.2d 303, 305 (10th Cir. 1969) (holding that over 100 individual out-of-state defendants were appropriately subjected to personal jurisdiction in Kansas based on the actions of the managing partner, acting as an agent of the partnership, who transacted business in the forum state).[9]

The cases cited by the Trustees in an effort to avoid personal jurisdiction involved either an absence or a bare minimum of contact with the forum state, completely different from the facts of the Trustees' contacts with Colorado in this case.  In *The Cascade Fund, LLLP v. Absolute Capital Mgmt Holdings, Ltd.*, No. 08-cv-01381, 2010 WL 1380389, at *9 (D. Colo.

---

[9] A "formal agency relationship" need not be shown.  *See Oriska Ins. Co. v. Power P.E.O., Inc.*, 352 F. Supp. 2d 291, 295 (N.D.N.Y. 2004) (court held that "plaintiff need not establish a formal agency relationship in order to show that the agent's actions were attributable to the defendants" as long as the plaintiff could show that the agent "engaged in purposeful activities in [forum] in relation to its transaction for the benefit of and with the knowledge and consent of the defendants and that the defendants exercised some control over the agent in the matter.") (internal citations omitted)).

Mar. 31, 2010), the plaintiff failed to point to any actions that board members "performed to purposefully direct their business activities to the United States" to support jurisdiction here.  In *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518 (10th Cir. 1987), the plaintiffs failed to show that directors had any individual contacts with forum state.)  In *Rittenmeyer v. Grauer*, 104 S.W.3d 725, 733 (Tex. Ct. App. 2003), the only basis for asserting personal jurisdiction over the director defendant was the location of the corporation's headquarters.  The facts here are simply different, involving much more extensive contacts between these defendants and this forum.

### C.    Alternatively, the State-Law Claims Against the Trustees "Arise Under" Federal Law, Providing Personal Jurisdiction Pursuant to Nationwide Service of Process

Alternatively, personal jurisdiction over the Trustees may be found because the breach of fiduciary duty and waste claims against them "necessarily depend[] on resolution of a substantial question of federal law" -- here, the legality of the payments at issue under the Advisers Act and *Financial Planning Ass'n .See Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (defining when state law claim arises under federal law).

When a state law claim arises under federal law, the court has federal question jurisdiction over those claims, and if the federal statute at issue includes a provision for nationwide service of process, the court has personal jurisdiction as well, so long as Fifth Amendment due process standards are satisfied.  *See Cory v. Axtec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006) ("Where Congress has statutorily authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise

of jurisdiction comports with Fifth Amendment due process." (citation omitted)); *Brautigam v. Priest*, No. 99-365, 2000 U.S. Dist. LEXIS 3123, at *8 (D. Del. March 2, 2000).[10]

Both the Advisers Act and the Investment Company Act have such provisions for nationwide service of process. *See* Section 214 of the Advisers Act, 15 U.S.C. §.80b-14, and Section 44 of the ICA, 15 U.S.C. § 80a-43.  Accordingly, because the state law claims against the Trustees arise under federal law, and those federal laws provide for nationwide service of process for claims arising thereunder, personal jurisdiction attaches to the Trustees on that basis as well.

## II.    VENUE IS PROPER IN THIS DISTRICT

### A.    Venue Is Proper in This District Pursuant to 28 U.S.C. § 1391(b)

As with personal jurisdiction, at the motion to dismiss stage plaintiff must "present only a *prima facie* showing of venue."  *Home Ins. Co. v. Thomas Indus. Inc*., 896 F.2d 1352, 1355 (11th Cir. 1990); *Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles,* Inc., No. 09-CV-0455, 2009 WL 3151343, at *2 (N.D. Okla. Sept. 24, 2009).[11]  All facts should be construed in the light most favorable to plaintiff.  *Home Ins.*, 896 F.2d at 1355.

---

[10] The Fifth Amendment's Due Process Clause is satisfied provided that plaintiff's choice of forum is "fair and reasonable."  *Peay v. BellSouth Med. Assistance Plan,* 205 F.3d 1206, 1212 (10th Cir. 2000).  Here, given that the Trustees may only have to travel to this District a handful of times at most to litigate this action coupled with their purposeful availment of this District, this forum is more than fair and reasonable.  Accordingly, the Trustees cannot "show [] that the exercise of jurisdiction in the chosen forum will be so inconvenient to rise to the level of constitutional concern."  *SEC v. Sealife Corp.*, 375 F.Supp.2d 1102, 1104 (D. Colo. 2005).  "Only in 'highly unusual cases' will inconvenience rise to that level."  *Id.* (citing *Peay,* 205 F.3d at 1210.)  Although a defendant may suffer some inconvenience by having to obtain counsel in Colorado and travel there, inconvenience is not constitutionally significant.  *Id.*

[11] In support of their argument that venue is not proper in this District, the Trustees cite *Rathbone L.L.C. v. XTO Energy, Inc*., 08-cv-1370, 2010 WL 891634 (W.D. Okla. Mar. 9, 2010).  As the court granted plaintiff's request for discovery therein, *Rathbone* is factually inapposite to the instant motion.

Plaintiff rests venue on 28 U.S.C. § 1391(b)(2) (Compl. ¶ 7), since this is a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Plaintiff factually asserts that Oppenheimer's compliance, accounting, and broker-dealer servicing functions, which handle the payments at issue and all compliance issues arising from the payments, all occur in this District, as described above. The documents relevant to this action, including all documents relating to board meetings, are also maintained here. Those basic facts establish that venue is properly laid in this Court.[12]

## B.    The Forum Selection Clause Is Not Enforceable

---

[12] Even if the Trustees could show that venue would also be proper elsewhere (like New York), that would not matter. It is well-settled that venue may be proper in more than one district. 14D Wright, Miller & Cooper, Federal Practice and Procedure § 3806.1 at 201 (3d ed. 2007); *see also Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.,* 815 F. Supp. 1403, 1407 (D. Colo. 1992). Moreover, "[t]he plaintiff is not required to establish that his chosen venue has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here] even if a greater part of the events occurred elsewhere." *Zinna v. Cook,* No. 06-cv-1733, 2008 WL 4874111, at *5 (D. Colo. Nov. 10, 2008); *see also Wood v. Kinetic Systems, Inc*., No. 09-579, 2010 WL 893647, at *9 (D. Idaho Mar. 9, 2010). As this Court has noted, it is "immaterial for purposes of finding venue in this district that events regarding the issue at hand occurred in another forum, even if those events are more substantial." *Ervin and Assoc., Inc. v. Cisneros*, 939 F. Supp. 793, 797 (D. Colo. 1996) (Kane, J.); *see also Gwynn v. Transcor Am. Inc.,* 26 F.Supp.2d 1256, 1261 (D. Colo.1998) ("Even if a more substantial portion of the activities giving rise to the claim occurred in other districts, venue is proper if the district the plaintiff chose had a substantial connection to the claim.").

The Trustees argue that venue is proper in New York because the asset-based compensation arrangements were approved there. While that approval is relevant to Plaintiff's claim, this is only one aspect of the issues raised by the claim. The function of the CCO and the compliance department is to report to the Trustees that the Rule 12b-1 fees, and payments financed by those fees, were being made lawfully, and thus the documents and people relevant to this case are in Colorado. In any event, even assuming that New York is a proper forum for the action, as stated above, more than one forum may be proper, and Plaintiff has demonstrated that Colorado is a proper forum. *See, e.g., Value Chain Solutions, LLC v. Quality One Wireless*, LLC, No. 09-2586, 2010 WL 1643690, at *6 (D. Kan. Apr. 20, 2010) (in denying motion to dismiss for improper venue, court observed that "while the Central District of Florida may be a proper forum for this dispute that does fact does not necessarily mean that the District of Kansas is an improper forum").

The Trustees attempt to invoke a "forum selection clause" added to the Trust's charter and filed with the Massachusetts Secretary of State on December 17, 2009.  That clause is not enforceable here.

Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases.  *See QFA Royalties, LLC v. Majed,* No. 06 01506, 2006 U.S. Dist. LEXIS 87445 (D. Col. Dec. 1, 2006), at *13 (citing *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22 (1988)).  As the parties seeking its enforcement, the Trustees have the burden to show: (1) that the clause was reasonably communicated at the time of contracting; (2) that the clause is mandatory and not merely permissive; and (3) that each claim and each party involved in the suit is subject to the clause.  If that burden is met, the burden then shifts to the plaintiff to show that enforcement would be unreasonable under the individual circumstances of this case.  *See Phillips v. Audio Active, Ltd*., 494 F.3d 378, 383-84 (2d Cir. 2007); *see also Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) (citing *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972)).  As shown below, the Trustees fail to satisfy their burden.

### 1.     No Reasonable Notice Was Provided to the Trust's Shareholders

As an initial matter, the Trustees have not shown that shareholders received notice of the Board's June 26, 2009 enactment of the forum selection clause.  This omission alone is fatal to their attempt to enforce that clause.  While the enforceability of forum selection clauses has been liberalized in recent decades to include clauses in non-negotiated consumer adhesion contracts, *see Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595 (1991) (cruise ticket stub), courts have not relaxed the reasonable notice requirement.  The consumer must have been given a physical copy of the document containing a prominent disclosure of the forum selection clause, and must have had a reasonable opportunity to read the clause and decide to reject the transaction.  *See Krenkel* v. *Kerzner International Hotels Limited*, 579 F.3d 1279, 1281 (11th

13

Cir. 2009) (per curiam) ("'reasonable communicativeness' takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms").

Even in the case of electronic transactions over the internet, the reasonable notice requirement is not satisfied if the consumer making a purchase has to click more than once to see the page containing the forum selection clause. *See Feldman v. Google, In*c., 513 F. Supp. 2d 229, 237, 247 (E.D. Pa. 2007) (terms of contract in online user agreement were immediately visible with instruction to indicate assent if the user agreed to the terms, and therefore the user "retained the option of rejecting the contract with impunity").

The Trustees do not cite a single precedent enforcing a forum selection clause in a charter document of a publicly-owned company, thereby tacitly acknowledging the lack of notice and individual consent problems that preclude enforcement in federal court.[13]  Arbitration clauses are not analogous because those clauses are governed by the Federal Arbitration Act.  There is no similar federal policy promoting the enforcement of forum selection clauses.

Shareholders have the right to inspect the Trust's charter document at the office of the Trust, *see* Amended and Restated Declaration, § 11.2, and the office of the Trust is specified in

---

[13] Commentators have speculated on what the first court to encounter a charter forum selection clause will conclude about the notice and individual consent issues. *See, e.g.*, Faith Stevelman, Regulatory Competition, Choice of Forum, and Delaware's Stake in Corporate Law, 34 Del. J. Corp. L. 57, 133-35 (2009) (skeptical about enforceability).

Enforcement of a charter clause could potentially have wide-ranging substantive impacts on corporate governance. For example, there is currently a tug-of-war between Delaware and California over shareholder voting rights.  Cal. Corp. Code § 2115 gives certain voting rights to shareholders of closely-held corporations with substantial California operations, irrespective of state of incorporation.  The Delaware Supreme Court has ruled that Cal. Corp. Code § 2115 is unconstitutional, s*ee VantagePoint Venture Partners 1996 v. Examen, Inc*., 871 A.2d 1108, 1109-10 (Del. 2005), a ruling that is not followed in California courts.  If forum selection clauses in charter documents are enforceable, then the dispute is resolved in favor of Delaware, because Cal. Corp. Code § 2115 could be effectively vacated by requiring that suits be maintained in Delaware.

its registration statement to be its Centennial office.  This appears to be the only notice of the

terms of the charter that Defendants have ever offered to shareholders.  Requiring shareholders

to travel to Colorado to inspect a document does not satisfy the federal standard for reasonable

notice at the time of contracting for purposes of creating an enforceable forum selection clause.[14]

Although the Trustees claim that the forum selection clause was adopted following an

affirmative vote by the Funds' shareholders (Zack Decl. ¶ 12), shareholders never received

notice of the voting results, nor notice of the Board's subsequent decision to go forward with the

adoption of amendments.  Accordingly, the voting procedure does not constitute notice.

Moreover, "reasonable notice" in the context of non-negotiated contracts refers to notice

at the time the consumer is making a purchase decision, not when a plaintiff is researching in

which venue to sue after a claim has accrued.  *See Carnival Cruise Lines*, 499 U.S. at 595

(consumer "retained the option of rejecting the contract with impunity" after reasonable notice).

The Trustees cannot show that each individual shareholder had notice sufficient to reject the

purchase of shares, or sell existing holdings, so as to reject the forum selection clause with

impunity.[15]  Thus, the Trustees have not and cannot meet their burden of showing "reasonable

notice."[16]

---

[14] While the Trustees state that the amended Declaration is available online (Zack Decl. ¶ 12), shareholders have no warning that they must read the full terms of the charter document in connection with the purchase of shares.  Moreover, while this case involves a restated declaration, shareholders would typically need to research many dozens of amendments filed over a decade or more to assemble a complete version of the operative charter document, many of which are not online, and all of which effort would have to be performed prior to making a decision to purchase shares.

[15] Shareholders also never received notice of the date that the clause was to go into effect.  While the Board adopted the amended charter on June 26, 2009, it was not filed with the Massachusetts Secretary of State until nearly six months later, on December 17, 2009, *see* Ex.10 to the Pollack Decl. (index page to Quest filings), in derogation of the statutory requirement that amendments must be filed within 30 days of adoption.  ALM GL ch. 182, § 2.  Trustees cannot hold charter amendments in their pocket and file them strategically when it suits their interest to make them effective.  *See Guterman v. Rice*, 121 F.2d 251, 256 (1st Cir. 1941) (by-laws amendment could

### 2. The Forum Selection Clause in the Trust's Charter Does Not Apply to Each Claim and Each Party

Even if the forum selection clause contained in the Trust's charter were valid (which it is not), the clause does not apply to OppenheimerFunds Distributor and Counts I and II asserted against that entity, because the charter does not govern the contract between OppenheimerFunds Distributor and the Trust. That means that those claims are properly laid in this District and will remain here.[17]

Requiring plaintiff to litigate this case in piecemeal fashion would be plainly unreasonable and unjust; thus, this Court should not enforce the clause. *See Stewart*, 487 U.S. at 28 n.7 (1988) (federal courts do not enforce forum selection clauses where enforcement "would be unreasonable and unjust[.]"); *Curwood Inc. v. Prodo-Pak Corp.*, 07 554, 2008 U.S. Dist.

---

not take effect where there was no showing that it was filed as required by statute, otherwise it would be impossible to fix a date when the amendment took effect).

[16] *See also Mezky v. U.S. Bank Pension Pla*n, 09 384, 2009 U.S. Dist. LEXIS 107574 (S.D. Ill. Nov. 18, 2009) (forum selection clause, added to a plan by a plan amendment, was invalid as against plan participants due to the failure to provide reasonable notice at the time of the amendment, irrespective of compliance with ERISA's summary notice requirements).

[17] The main federal claim in this action (Count I) is a cause of action on behalf of the Trust against a third-party service provider to the Trust (OppenheimerFunds Distributor) to void certain payments under a Distribution Agreement. There is no relationship between the Trust and OppenheimerFunds Distributor outside of their Distribution Agreement. It has not been contended in this action that there is a forum selection clause in the Distribution Agreement. The Trustees are not named defendants in this claim. Similarly, Count II is a related state law claim for breach of contract between the Trust and OppenheimerFunds Distributor, and it does not assert claims against the Trustees.

In this action, OppenheimerFunds Distributor is a third-party vendor against whom the forum selection clause in the Trust's charter does not apply as it is not a party to the Trust and the Trust charter does not govern any of its rights. *See Sec. Mut. Life Ins. Co. of New York v. Shapiro*, No. 09 0316, 2009 U.S. Dist. LEXIS 82934, at *18 (N.D.N.Y. Sept. 11, 2009) (life insurance company, which sold a policy to fund a Trust, cannot invoke the forum selection clause in the Trust Agreement because the life insurance company is not a party to the Trust and the Trust Agreement does not govern disputes with third-party vendors). Thus, because the forum selection clause is inapplicable as to the claims asserted against OppenheimerFunds Distributor, those claims will remain here.

LEXIS 18295 (E.D. Wis. March 7, 2008) (where only some causes of action were subject to a forum selection clause, it would be unreasonable to transfer those claims to another federal district court and create piecemeal litigation); *Pegasus Transportation v. Lynden Air Freight*, 152 F.R.D. 574, 577 (N.D. Ill. 1993) (enforcement of the forum selection clause applicable to some of the causes of action in a complaint is unreasonable if it results in parallel state and federal proceedings) (and cases cited therein); *Vision Technology Design & Mft., Inc. v. General Wire Spring C*o., No. 07 412, 2007 U.S. Dist. LEXIS 54046 (E.D. Cal. July 17, 2007).

Moreover, it would be unreasonable to transfer the claims against the Trustees out of this District because the Trustees cannot and do not make a charter-based forum selection argument in the parallel case filed in this Court by plaintiff, namely, *Smith v. OppenheimerFunds Distributor, Inc*. No. 1:10-cv-00655-JLK, with respect to another Oppenheimer mutual fund. Keeping both cases in this Court will serve the interests of judicial economy and uniformity of decision.

## III.  THE COMPLAINT ADEQUATELY ALLEGES STATE LAW CLAIMS AGAINST THE TRUSTEES

### A.  Plaintiff Is Only Required to Plead a Plausible Claim for Relief

Federal Rules of Civil Procedure Rule 8(a)(2) "requires only (that Plaintiff set forth) 'a short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S.544, 554-55 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Indeed,"[s]pecific facts are not necessary." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 55)).

In evaluating whether the Complaint states a plausible claim for relief against the Trustee Defendants, the Court must accept as true all of the well-pleaded factual allegations. *Erickson*,

551 U.S. at 94 (*citing Twombly*, 550 U.S. at 555-56).  *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").  Further, "while a plaintiff's claim to relief must be supported by sufficient factual allegations to be 'plausible' under *Twombly*, nothing requires a plaintiff to prove her case in the pleadings." *Chao v. Ballista,* 630 F. Supp. 2d 170, 177 (D. Mass. 2009).  A complaint will survive a motion to dismiss if "the facts, evaluated in the [the required] plaintiff-friendly manner, contain enough meat to support a reasonable expectation that an actionable claim may exist."  *Andrew Robinson Int'l , Inc. v. Hartford Fire Ins*. Co., 547 F.3d 48, 51 (1st Cir. 2008).

> **B.     Plaintiff Has Pleaded Plausible Claims for Waste and Breach of Fiduciary Duty**

> > **1.     The Waste Claim Is Distinct from the Breach of Fiduciary Duty Claim and Is Adequately Alleged**

The Trustees' assertion that plaintiff's corporate waste claim is "as a matter of law" the same as the breach of fiduciary duty claim (Trustee Mot. at 17) is erroneous.  In support of their argument, the Trustees cite *Hendersen v. Axiam, Inc*., No. 962572D, 1999 WL 33587312 (Mass. Super. Ct. June 22, 1999).  In *Hendersen*, although the court held that the waste claim in that action for payment of their legal fees and expenses was essentially duplicative of the breach of fiduciary duty claim, it clearly did not hold that a separate waste claim may never be pled in the same action in which a breach of fiduciary duty claim is pled.  In fact, courts routinely adjudicate such claims separately.  *See, e.g., Patrick v. Allen,* 355 F. Supp. 2d 704, 714 (S.D.N.Y. 2005) ("A prima facie showing of lack of due care is distinct from a prima facie showing of corporate waste, which may constitute a cause of action against directors separate and distinct from breach of the duty of loyalty or due care."); *Astra USA, Inc. v. Bildman*, 455 Mass. 116 (Mass. 2009)

(indicating defendants found guilty at trial of, among other things, waste and breach of fiduciary duty).

Under Massachusetts law, the elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) breach; (3) damage: and (4) causation. *See, e.g., Hanover Ins. Co. v. Sutton*, 705 N.E. 2d 279, 288 (Mass. App. Ct. 1999). As the *Hendersen* court states, "[t]he essence of a claim of waste of corporate assets is the diversion of corporate assets for improper or unnecessary purposes." *Hendersen,* 1999 WL 33587312, at *53 (citing *Michelson v. Duncan*, 407 A.2d 211, 217 (Del. 1979)). A plaintiff alleging corporate waste must plead facts that show the defendant has engaged in "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *In re Nat'l Auto Credit S'Holders Litig.*, No. 19028, 2003 Del. Ch. LEXIS 5, at * 47 (Del. Ch. Jan. 10, 2003).

Here, plaintiff has properly pled a cause of action for corporate waste. In the Complaint, he alleges that the Trustees allowed the trust assets to be depleted in order to pay unlawful compensation payments to unauthorized broker-dealers. Compl. ¶¶ 4-5, 87. And, "[a]s a result of authorizing unlawful Asset-Based Compensation to be paid from Trust assets to OppenheimerFunds Distributor and its sub-agents . . . and by failing to conduct proper supervision, the Trustee Defendants have caused a *per se* waste of valuable Trust assets." *Id.* ¶ 87. These allegations are sufficient to "raise a right to relief above the speculative level," and thus form the basis of a cognizable corporate waste claim. *Twombly*, 550 U.S. at 555.

## 2.    The Breach of Fiduciary Duty Claim Is Also Adequately Pled

With respect to his breach of fiduciary claim, plaintiff alleges that "the Trustee Defendants have primary responsibility for service providers' compliance with the federal securities laws, including compliance with the requirements of the Advisers Act, as applicable, in

connection with the distribution of Trust Shares." Compl. ¶ 49. Among other things, "[t]he Trustee Defendants were required to review and approve the compliance policies and procedures at OppenheimerFunds Distributor." *Id.* The Complaint alleges that the compliance procedures were defective because OppenheimerFunds Distributor was checking to make sure the broker-dealers were registered under the Exchange Act, but not making sure that the broker-dealers were also registered under the Advisers Act, or otherwise providing advisory accounts, so that they had the lawful right to receive asset-based compensation:

> Specifically, in the period from July 22, 2005 (the effective date of the disclosure requirements of SEC Rule 202(a)(11)-1) to September 30, 2007, the Trustee Defendants failed to ascertain whether OppenheimerFunds Distributor had compliance policies and procedures in place to ensure that broker-dealers receiving Asset-Based Compensation payments in connection with Trust shares held in brokerage accounts that were opened in that period were in compliance with the conditions set forth in former SEC Rule 202(a)(11)-1 for receipt of such compensation. In the period from October 1, 2007 to present, the Trustee Defendants failed to ascertain whether OppenheimerFunds Distributor had compliance policies and procedures in place to ensure that Asset-Based Compensation is paid only to registered investment advisers, or broker-dealers that are dual registrants, and that Trust shares upon which such compensation is paid are held in advisory accounts governed by the Advisers Act.

*Id.* ¶ 55.

> The Complaint further alleges that:

> Each of the Trustee Defendants also engaged in an intentional dereliction of duty and demonstrated a conscious disregard for his or her responsibilities. The Board of Trustees had an affirmative duty to investigate the legality of the broker-dealer compensation payments, including through mandated quarterly reviews of 12b-1 fee payments, annual compliance reviews of service providers, and responding to "material compliance matters" as defined by SEC Rule 38a-1, including determining whether Trust shares were held in brokerage accounts. The Trustee Defendants thereby acted in bad faith to the shareholders of the Trust by failing to act as ordinary prudent persons would have acted in a like position.

*Id.* ¶ 82  Not only does the Complaint allege reckless disregard, it also alleges conscious

disregard and bad faith with the requisite particularity. *Id.*

As such, it is readily apparent that plaintiff has adequately given notice to the Trustees of

the basis upon which his claim for breach of fiduciary duty rests, and has pleaded a plausible

claim for relief.

The Trustees claim that the breach of fiduciary duty claim is insufficient under

Massachusetts law because it purportedly alleges in a conclusory fashion that they acted with

"reckless disregard," and plaintiff's claim cannot be founded on "anything less than gross

negligence."  Trustee Mot. at 18.  However, it is well settled under Massachusetts law that such

conduct does not have to be alleged because "[l]iability may be found even in the absence of bad

faith or dishonesty on the part of the director if he fails to recognize his fiduciary duty."

*Robinson v. Watts Detective Agency,* 685 F.2d 729 (1st Cir. 1982).  *See also Production Mach.*

*Co. v. Howe*, 99 N.E. 2d 32, 36 (Mass. 1951) (a breach of fiduciary duty "could be found

although no corruption, dishonesty, or bad faith was involved").  "Moreover, affirmative

malfeasance by a director is not necessary in order to constitute a breach of duty; mere passivity

can rise to the level of negligence if the director does not 'exercise the degree of care which a

prudent person ordinarily would use as a director.'"  *Robinson,* 685 F.2d at 736-37 (quoting

*Hathaway v. Huntley*, 188 N.E. 616, 618 (1933)).

Even assuming that the Trustees were correct that reckless disregard must be pled, which

they are not, plaintiff sufficiently alleged how the Trustees acted in reckless disregard of their

duties:

> Each of the Trustee Defendants participated in the acts of
> mismanagement alleged herein, or acted in reckless disregard of
> the facts and law known to them, and failed to exercise due care to
> prevent the misuse of Trust assets.  The Trustee Defendants

> became aware, or should have become aware through reasonable
> inquiry, of the facts alleged herein including, among others, the
> deficiencies in the compliance policies and procedures of the Trust
> and its service providers permitting unlawful payments of Asset-
> Based Compensation to broker-dealers in connection with Trust
> shares held in brokerage accounts.  The Trustee Defendants
> thereby breached their duty of care and loyalty to the shareholders
> of the Trust by failing to act as ordinary prudent persons would
> have acted in a like position.

*Id*. ¶ 81.  These allegations are plainly sufficient under *Twombly* to give the Trustees

notice of the wrongdoing alleged against them.

### C.   The Exculpatory Clause Does Not Mandate Dismissal of Plaintiff's Breach of Fiduciary Duty Claim

#### 1.   The Trustee Defendants May Not Raise the Existence of an Exculpatory Provision at the Motion to Dismiss Stage

The Trustees' reliance upon a purported exculpatory clause in the Amended Declaration

of Trust in an effort to dismiss the fiduciary duty claim against them also fails.  The existence of

the purported clause is an affirmative defense that is improper to raise in a motion to dismiss.

*See, e.g., In re Polymedica Corp. S'Holder Derivative Litig*., 15 Mass. L. Rep. 115 (Mass. Super.

Ct. 2002) ("The possible application of certain exculpatory provision[s] of [the corporation's]

Articles of Incorporation--essentially an affirmative defense--is not an issue that is appropriately

addressed at this early stage."); *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 242

(3d Cir. 2005) (holding that "because the protection of an exculpatory charter provision appears

to be in the nature of an affirmative defense," such a provision "will not form the basis for

dismissal under Rule 12(b)(6)"); *Ad Hoc Comm. of* Equity *Holders of Tectonic Network, Inc. v.*

*Wolford*, 554 F. Supp. 2d 538, 561 (D. Del. 2008) (denying defendant's motion to dismiss

plaintiff's duty of care claims on the grounds that exculpatory provisions cannot be considered at

dismissal stage); *Miller v. McCown De Leeuw & Co. (In re Brown Sch.)*, 368 B.R. 394, 401

(Bankr. D. Del. 2007) (holding that "[t]he exculpation clause is an affirmative defense and the

determination of the viability of that defense is not proper at this stage"); *In re Taser Int'l S'holder Derivative Litig.*, No. 05-123, 2006 U.S. Dist. LEXIS 11554, at *59 (D. Ariz. Mar. 17, 2006) (court declined to consider exculpatory charter provision at the motion to dismiss stage because the "liability shield provided by a certificate of incorporation . . .is 'in the nature of an affirmative defense.'").

### 2. The Exculpatory Clause Violates General Laws c.156D, § 2.02(b)(4), and Is Therefore Invalid

In the event the Court deems it appropriate to address the purported exculpatory clause at this juncture of the action, as shown below, the clause violates General Laws c.156D, § 2.02(b)(4), and is therefore invalid.  This statute is applicable to the Trust because it is organized as a business trust under Massachusetts law.  *See* Trustee Mot. at 3.  In recent years, the business trust has been increasingly viewed as a type of corporation itself, and treated as such by courts and legislatures.  *See State Street Trust Co. v. Hall*, 41 N.E.2d 30, 34 (Mass. 1942) (the Supreme Judicial Court of Massachusetts detailed the similarities between business trusts and corporations and acknowledged that "[t]he sum total of these distinctive features of a business trust has brought trusts into such close resemblance to corporations that they have been frequently considered as corporations, sometimes by virtue of constitutional or statutory provisions and sometimes without such provisions."); *Minkin v. Commissioner of Revenue*, 680 N.E.2d 27, 31 (Mass. 1997) (holding that "[t]here is no intrinsic difference between a corporate business trust and a corporation") (quotation omitted); *Swartz v. Sher*, 184 N.E.2d 51, 53 (Mass. 1962) (noting that a business trust "in practical effect is in many respects similar to a corporation" and because of this, business trusts "have been submitted to substantial statutory regulation in many respects similar to the regulation of corporations").

Thus, the Trust should similarly be treated as a corporation under Massachusetts law.  As such, it is subject to Mass. Gen. Laws ch. 156D, § 2.02(b)(4), which governs the inclusion of exculpatory provisions in corporate charters and declarations of trust.

> The statute authorizes corporations to include:
>
> a provision eliminating or limiting the personal liability of a director to the corporation for monetary damages for breach of fiduciary duty as a director notwithstanding any provision of law imposing such liability; ***but the provision shall not eliminate or limit the liability of a director (i) for any breach of the director's duty of loyalty to the corporation or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law***, (iii) for improper distributions under section 6.40, or (iv) for any transaction from which the director derived an improper personal benefit.

(Emphasis added).

The amended exculpatory clause, as well as the original one, do not track this statute's language, but instead provides:[18]

> No person who is or has been a Trustee, officer or employee of the Trust shall be liable to the Trust or to any Shareholder, Trustee, officer, employee, or agent of the Trust for any action or failure to act (including without limitation the failure to compel in any way any former or acting Trustee to redress any breach of trust) except

---

[18] The original exculpatory provision provides:

> No Trustee, officer, employee or agent of the Trust shall be liable to the Trust, its Shareholders or to any Shareholder, Trustee, officer, employee or agent thereof for any action or failure to act (including without limitation the failure to compel in any way any former or acting Trustee to redress any breach of trust) except for his own bad faith, willful misfeasance, gross negligence or reckless disregard of his duties.

To the extent that the amended exculpatory provision purports to shield the Trustees from liability for more actions than the original provision does, including "errors of judgment or mistakes of fact or law," it does not apply retroactively because the Complaint alleges wrongdoing that predates June 26, 2009, the alleged date of the amendment.  *See First Chicago International v. United Exchange Co.*, 125 F.R.D. 55, 59 (S.D.N.Y. 1989) (construing a similar amended provision limiting liability for corporate directors and holding that in the absence of evidence to the contrary, courts must presume that such provisions apply prospectively).  Thus, if deemed valid, the original exculpatory provision, not the amended one, applies to the Trustees' actions that predate June 26, 2009.

>for his own bad faith, willful misfeasance, gross negligence or
>reckless disregard of his or her duties involved in the conduct of
>the individual's office, and for nothing else and shall not be liable
>for errors of judgment or mistakes of fact or law.

Zack Decl. Ex. 4, § 9.2(b).

The language of this provision is overly broad and attempts to shield the Trustees from

liability for actions not covered by the statute, including errors of judgment or mistakes of fact or

law.[19]  Because the parties disagree about the validity of the provision, the Court should decide

the issue of its applicability at a later juncture, as was done in *Panos v. Sullivan (In re Sabine,*

*Inc.)*, No. 03-10888, 2006 Bankr. LEXIS 381 (Bankr. D. Mass. Feb. 27, 2006).  In *Panos*, the

defendant corporation's charter contained an exculpatory provision that did not refer to or track

the language of 8 Del. Code § 102(b)(7), which authorizes Delaware corporations to include such

provisions in their charters.[20]  The plaintiff argued that this failure to include the statutory

language rendered the clause ineffective.  *Id.* at *14-15.  The court denied the defendant's motion

to dismiss, holding that "the question of whether the protective provisions of Delaware General

Corporation Law § 102(b)(7) was properly incorporated by reference into [defendant's] charter is

a legal one which will be determined at the summary judgment stage of these proceedings."  *Id.*

at *16-17. A federal bankruptcy court, construing a Massachusetts company charter, addressed

the issue of whether to consider an exculpatory provision on a motion to dismiss.  *CTC*

---

[19] The statute prohibits the Trustees from exculpating themselves from "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law."  In the Complaint, Plaintiff alleges that the Trustees "acted in bad faith to the shareholders of the Trust by failing to act as ordinary prudent persons would have acted in a like position." (Compl. ¶ 82). As such, even if the exculpatory provision is deemed valid and applicable, these acts are not covered.

[20] "The exculpatory provision in [both Massachusetts' and Delaware's] statute is substantially the same."  *CTC Litigation Trust v. Fabbricatore (In re CTC Communs. Group Inc.)*, No. 02-12873, 2007 Bankr. LEXIS 956, at *13 n.4 (Bankr. D. Mass. Mar. 13, 2007).

*Litigation Trust*, 2007 Bankr. LEXIS 956 at *16.  The court held that because plaintiffs

contended that the provision did not apply, there existed a "dispute regarding the applicability"

of the provision, and concluded that this dispute was a "matter for trial or summary judgment,

not dismissal." *Id.*

## **CONCLUSION**

For all the foregoing reasons, plaintiff respectfully requests that the Trustees' motion to

dismiss be denied in its entirety.


MILBERG LLP

DATED:          August 4, 2010


_____/s/Janine L. Pollack_____
Janine L. Pollack
Michael C. Spencer
**mspencer@milberg.com**
Janine L. Pollack
**jpollack@milberg.com**
One Pennsylvania Plaza
New York NY  10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

Jeffrey A. Chase
**jchase@jacobschase.com**
Andrew W. Myers
**amyers@jacobschase.com**
JACOBS CHASE FRICK KLEINKOPF
& KELLEY LLC
1050 Seventeenth Street, Suite 1500
Denver, CO  80265
Telephone:  (303) 685-4800
Facsimile:   (303) 685-4869

Lee A. Weiss
**lweiss@bwgfirm.com**
BROWNE WOODS GEORGE LLP
1 Liberty Plaza, Suite 2329
New York, NY  10006
Telephone:  (212) 354-4901
Facsimile:  (212) 354-4904

Ronald A. Uitz
**ron877@yahoo.com**
UITZ & ASSOCIATES
1629 K Street, N.W. Suite 300
Washington, D.C.  20006
Telephone:  (202) 296-5280
Facsimile:   (202) 521-0619

Alfred G. Yates, Jr. Esq.
**yateslaw@aol.com**
LAW OFFICE OF ALFRED G. YATES, JR.
P.C.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, Pennsylvania 15219
Telephone:  (412) 391-5164
Facsimile:   (412) 471-1033

**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2010 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

David A. Kotler
david.kotler@dechert.com

William K. Dodds
William.dodds@dechert.com, luis.lopez@dechert.com

Robert N. Miller
rmiller@perkinscoie.com, rmiller-efile@perkinscoie.com

Stephanie E. Dunn
sdunn@perkinscoie.com; sdunn-efile@perkinscoie.com

Arthur H. Aufses, III
aaufses@kramerlevin.com

Edward T. Lyons, Jr.
elyons@joneskeller.com


    /s/   Janine L. Pollack    
            Janine L. Pollack